STOKER, Judge.
This is a suit by a licensed real estate broker, Newton Thibodeaux, to recover a real estate commission claimed in the amount of $5,000.00. The defendants are the widow and three of the four children of R. D. McGee, Sr., deceased. The trial court found for the defendants and rejected the demand of the plaintiff for his real estate commission and attorney’s fees.
The issues in this case are as follows: (1) Did plaintiff earn a commission under his listing contract through obtaining a verbal agreement from a group to purchase the property (apparently for cash) within the four-month listing period and communicating the agreement to the sellers although no buy-sell agreement, sale or written acceptance was obtained from the purchasers? Alternatively, (2) Did plaintiff earn a commission after expiration of the listing contract by obtaining the signatures of three of the original proposed purchasing group to a buy-sell agreement, which, moreover was for terms as to payments rather than cash?
The property in question consisted of real estate and more particularly the Pelican Motel complex located in Eunice, Louisiana. On August 21, 1975, defendants signed a listing contract with Newton Thibodeaux to sell the property in question which was described as “located 1500 block of W. Laurel (Hwy. 190) Eunice, La. known as the Pelican Motel and Restaurant — ground measurements about IV2 City block.” The precise terms of the listing agreement contract are as follows:
I/we employ you or your successors, exclusively, with the sole and exclusive right, to sell the same for $125,000.00 Cash, or for the following terms:- or for any other price or terms as may hereafter be agreed upon, and I/we agree to pay you or your successors, a commission of six (6V2%) per cent on the gross amount of any deal — agreement to sell or *1387 exchange — bearing on said property,— minimum commission of $100.00 — that may be negotiated during the existence of this contract, or on the gross amount of such agreement made within ninety (90) days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract. You are given exclusive authority to post signs on the property, to accept a non-interest bearing deposit, when satisfactory offer to purchase the property is obtained, and to place this deposit in any bank you may select, out of which you may deduct your commission. In case of employment of Counsel to enforce this contract, I/we will pay all cost and Attorney’s fees. I/we agree to refer all applicants to you, and not to interfere in the sale of the property, during the term of this contract.
As you are to act upon the faith of this employment and contract, it is to remain in full force and effect for a period four (4) months from date.
Commission not to exceed — $5,000.00.
The above contract was signed on behalf of the estate of Ralph McGee by R. Douglas McGee, Jr., Dorothy McGee Eleazar, Joan McGee Hansen and Mrs. Laurie Barry McGee.
Inasmuch as this was a four-month contract it would expire by its terms at the end of the day on December 21, 1975. Prior to that time Mr. Newton Thibodeaux informed R. Douglas McGee, Jr., who appears to have been the spokesman for the McGee family, that he had obtained a purchaser consisting of a group of five persons including Newton Thibodeaux himself, Ira Richard, Kearney Tate, Leonce Thibodeaux and Paul Rozas. No written contract to buy and sale was confected at this time. In response to this verbal information given by Newton Thibo-deaux to R. Douglas McGee, Jr., the latter informed Newton Thibodeaux to go ahead and have the papers prepared to effect the sale.
As Mr. Kearney Tate was an attorney, he undertook to act to examine the title for the purchasing group. He soon determined that there were title problems and related this information to Mr. Newton Thibo-deaux. The title problems appeared to have presented bona fide questions, and among other matters, there was a question of a possible encroachment of one of the buildings of the complex, or the building itself, on adjacent property or possibly a city owned servitude. Mr. R. Douglas McGee, Jr., being a certified engineer, was requested to prepare and furnish a survey which he agreed to do.
Mr. McGee’s survey was not completed and delivered until January 2, 1976. On that date he met with Newton Thibodeaux and the purchasing group. At that time the purchasing group had learned that, in addition to possible title problems and the building encroachment difficulty, the restaurant equipment belonged to the operator of the restaurant rather than to the McGee family.
All parties testified concerning what happened at the meeting on January 2, 1976, and there seems to be substantial agreement as to what was said. However, there is total disagreement between the purchasing group, which we will refer to as the “Kearney Tate group” and R. Douglas McGee as to the proper interpretation to be placed on what was said. All agree, however, that the Kearney Tate group requested Mr. McGee to excuse himself and let them discuss matters among themselves. After the elapse of some time the Kearney Tate group again conferred with Mr. McGee and suggested to him that in view of the title difficulties and the nonownership of the restaurant equipment an adjustment in price would be in order. It appears that Mr. McGee may have indicated he felt there was some justification for an adjustment. In any event, he advised that he would take the matter up with the McGee family. The purchasing group appeared to have felt that they would have an answer during the *1388 course of the day and that a formal buy and sell agreement would be drawn up. It seems to be agreed that the adjustment discussed was $6,000.00 which would have reduced the price to $119,000.00. The Kear-ney Tate group takes the position that they merely requested whether or not an adjustment would be accorded. On the other hand, Mr. McGee takes the position that a counter-offer was thereby made and that the offer to sell made through Newton Thi-bodeaux had thus been rejected.
Mr. R. Douglas McGee did not contact the Kearney Tate group again on January 2nd. He did not respond until January 7,1976, at which time he contacted the office of Newton Thibodeaux. Inasmuch as Mr. Thibo-deaux was absent, Mr. McGee left a message that the McGee family had obtained a better offer than the one submitted by the Kearney Tate group. On January 8, 1976, Mr. Newton Thibodeaux returned to his office, and upon finding the message, contacted his partners, and three of them executed a formal buy-sell agreement and posted a $25,000.00 deposit with Newton Thibo-deaux. The terms of the offer were $25,-000.00 in cash and a $100,000.00 mortgage which was to be financed by the McGee family over a ten year period at 8 percent per annum interest. The McGee family never accepted this offer.
As of January 7, 1976, a formal written contract to buy and sell was entered into by the McGee group and Charles N. Wooten and Ralph Douglas McGee, Jr. (Ralph Douglas McGee, Jr. appearing both as a proposed seller and proposed buyer) in which the purchasers agreed to purchase the property for $125,000.00 payable in cash in the amount of $25,000.00 with the balance to be paid through a mortgage note to run for 15 years at 8 and V2 percent interest per annum. As an ultimate matter the property was conveyed to Mr. Charles N. Wooten who in turn sold a one-half interest to Ralph Douglas McGee, Jr. However, as of January 20, 1976, the Kearney group were still of the impression that the matter remained open. It appears that on January 8, when Newton Thibodeaux contacted R. Douglas McGee, Jr., the latter informed Thibodeaux that the family had a better deal, but that if the Kearney group wished to submit an offer they were free to do so. As a consequence, the January 8, 1976, offer by the Kearney group was submitted and was apparently still under consideration as of January 20, 1976. At that time Mr. Newton Thibodeaux contacted R. Douglas McGee, Jr. to determine the status of the offer of the Kearney Tate group and advise that it could not remain open indefinitely. It appears that a letter to that effect was forwarded to each of the McGees. After the conveyance of the property to Mr. Wooten the operative facts involved in this case came to an end and resulted in this litigation.
POSITION OF PLAINTIFF-APPELLANT
It is the position of plaintiff-appellant, Newton Thibodeaux, that he earned a real estate commission of $5,000.00 as a result of a verbal agreement of the Kearney Tate group to purchase the property which had been verbally communicated to R. Douglas McGee prior to the expiration of the four-month listing. In the alternative, Newton Thibodeaux takes the position that he effected a second purchase agreement growing out of the January 8, 1976, written buy and sell agreement signed by three of the Kearney Tate group.
POSITION OF DEFENDANTS-APPEL-LEES
It appears to be conceded by the defendants-appellees that, had Newton Thibo-deaux obtained a written and signed buy and sell contract from the Kearney Tate group within the four-month listing period, a commission would have been owed. They appear to concede also that, had the McGee family sold the property to the Kearney Tate group within the 90 day period following the ending of the contract, a commission would be owed. However, they urge *1389 that, since no sale was made to the Kearney Tate group within that 90-day period, but was in fact made to someone else, the commission was not earned.
OBJECTIONS TO PAROL EVIDENCE
Early in the trial at the first point at which plaintiff’s counsel sought to elicit testimony concerning the verbal transmission of the agreement of the Kearney Tate group to purchase the property within the four-month listing period, counsel for the defendants-appellees objected to this evidence on the ground that it was inadmissible as parol evidence.
TRIAL COURT’S DENIAL OF RECOVERY
The trial court denied recovery and dismissed plaintiff’s suit. While his reasons for judgment, given in written form, are somewhat different, from ours, we reach the same conclusion and affirm.
As we see the issues in this case, they are simplified to this extent: Plaintiff has no right to recover a real estate commission unless it be upon the basis of services performed by him within the four-month listing period, that is, prior to December 21, 1975. Once the four-month listing period had expired, all other facts are immaterial.
We regard as immaterial those understandings (perhaps a better term would be misunderstandings) which came about on January 2, 1976. The Kearney Tate group insist in their testimony that their $125,-000.00 purchase offer was never withdrawn and that they merely approached the McGee family through R. Douglas McGee, Jr. for an adjustment. As noted above, Mr. McGee took the request as a rejection inasmuch as the request was in the form of a counter offer. However, it is immaterial whether or not a counter offer was made or whether there was simply a request for an adjustment without a withdrawal of the $125,000.00 offer. The fact of the matter is that there never was a binding agreement between the McGee family and the Kearney Tate group at any time, either before December 22, 1975, or afterwards. Consequently, the parties were simply dealing with one another without any binding agreement existing between them from the time Newton Thibodeaux informed Mr. McGee that he had a sale until January 2, 1976. Admittedly, until January 2, 1976, there appears to have been no question but that the sale would go through. In fact, Mr. McGee had called late in December to determine what the hold up was from the stand point of the Kearney Tate group. He had furnished succession proceedings through his attorney and was informed of the need for a survey; he agreed to do one and did so.
We also regard everything that took place after January 2,1976, as being immaterial for the reason, as stated above, recovery of a real estate commission by the plaintiff would depend solely on whether or not he is entitled to one on the basis of what he did prior to December 22, 1975. The fact that he obtained a written buy and sell agreement on January 8, 1976, with parties with whom he had been dealing is of no moment. At that time he could not commit the McGee group because he was beyond his listing contract. Plaintiff has •attempted to cast some doubt as to the validity of the January 7, 1976, contract to buy and sell between Mr. Wooten and R. Douglas McGee, Jr. and the rest of his family. However, we see no significance to be drawn from whatever the facts may have been. The fact is that the McGee family never did accept the buy and sell agreement, which in effect constituted an offer, of the Kearney Tate group. Much is made of the fact that on January 8, 1976, Mr. R. Douglas McGee, Jr. told Newton Thibodeaux that his family would welcome another offer from the Kearney Tate group. Much is also made of the fact that after the January 20, 1976, communication from Mr. Thibodeaux, Mr. R. Douglas McGee, Jr. asked for an extension of time. However, Mr. McGee explains all of his *1390 action on the basis of the fact that the negotiations with Mr. Wooten were not settled because they were not finally approved by one member of the family. Nevertheless, as has been indicated, all of the acts, conversations, offers, contracts, and other operative facts which took place after December 21, 1975, have no legal significance inasmuch as the property was never sold to any of the Kearney Tate group. Mr. Newton Thibodeaux never offered the property to Charles N. Wooten. Therefore, nothing that plaintiff did in his post-listing contract period was of legal significance. In view of our holding, we find it unnecessary to discuss the applicability of the parol evidence rule.
Accordingly, for the reasons assigned the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.